This case number 417-0602 H&R Property v. Bradley and is that Conine or? Conine. Conine, alright. And for the appellant we have Mr. Hines and for the appellee we have Mr. Barger, is that correct? That's correct. Are you ready to proceed, counsel? I'm ready, ma'am. You may do so. Your honors, counsel, may it please the court, I'm Barry Hines, attorney for the appellant. We're here today on a very narrow issue for appeal. The trial court found a prescriptive easement and the aspect of the trial court's decision that we're questioning on appeal is the court's decision that the easement was not abandoned or terminated by reason of the change of use of the dominant estate. What happened here is this was a parcel of the dominant estate that was used for farming for a number of years. Testimony from 1964 to 2012 was that the use was farming. In 2012, the property was put into the United States Government Wetland Reserve Program. It was deeded. And under that program, farming is no longer permitted. Hunting, however, is, as well as just, for instance, walking around on the property, enjoying the area, the growth, whatever. And for butterflies, you can do anything, but you cannot build on it. You cannot run a commercial enterprise upon it. By reason of that act of the then owner, we believe the prescriptive easement, which had been for access for farming purposes, was abandoned. Furthermore, following the conveyance of the government, put it in the Wetland Reserve Program, the property was sold to H&R, the plaintiff in this case, and they acquired it for the purpose of hunting and they hunted upon the property. So they changed the use of the dominant estate from farming to hunting. A prescriptive easement, the scope of a prescriptive easement, is defined by the use which created that easement or the need for the prescriptive easement, and that was farming. Access for farming equipment. To get to this property from the Township Road, farm tenants would drive over the Serbian property for planting, for tilling the crop, for harvesting the crop. That has changed by reason of the fact that it's in the government program and by reason of the fact that now hunting is the use of the property. Counsel, let me ask you a question. Let me back up a little bit. Yes. Your original premise was that this property was only used for farming. Yes. And so I wonder what impact does the representation by Stuart Ensor regarding his sometimes use of the property, what effect does that have on your argument in that he talked about occasionally engaging in clay shooting on the property? Yes, clay shooting, of course, not hunting. I understand that, but it's not farming either. It still involves firearms though. And he did, we did have his testimony that he or I think a grandchild was involved in that. But the overwhelming evidence was that the use of this property was farming purposes and that was why this grassy lane was necessary to get the farm equipment back to the property. There was testimony as to other ways that you could access the property other than this lane, but as far as getting farm equipment back there, this lane was pretty much the only way to get heavy farm equipment back. And I think that's what distinguishes that, Your Honor, plus the fact that hunting is a regulated enterprise. Hunting is licensed by the state. Hunting involves the use of either guns or a bow and arrow, but a dangerous instrumentality, something that is controlled, something that I don't believe, a prescriptive easement isn't a fee simple title. It's not a license to do whatever you want. You know, the trial court said that this easement was for access, not for farming, and that therefore it did not make any difference that the use changed from farming to hunting. If that's the test, then the result in Limestone and in the Enargo decision, unusually decisions that both sides rely upon as being determinative of this case, but the decision in both of those cases would have been just the opposite because both of those cases involved access. One was access for water and underground pipes. The other was access for vehicles for fishing, which they wanted to change to commercial quarry. Well, in those cases, counsel, what about the issue of the burden on the easement? That seems to be a distinguishing factor in Enargo as well as Limestone in terms of Enargo, the fact that you had, they wanted to increase the size of those drainage tiles from 10 inches to 24 inches. That's significant. And then in Limestone, you want to go from using it for access for recreational activities to using it to access for commercial purposes. Right. And so I'm wondering in our case here, given that we're talking about going from using it for farming, bringing heavy farm equipment and all that goes along with that across the easement versus noncommercial hunting, hunters walking over. But they're going to be walking in with firearms. They're going to be walking in equipped to kill. And that is just traditionally, I think, something that is unique to the owner of the property to consent to. It is something. But they're doing that to access the property. I mean, are you saying that you have concerns they're actually going to be hunting on the easement itself? No, I think it's, you're going to traverse the easement with the hunting tools. Sure. So you're going to be on the servant owner's land with those either shotguns or bows and arrows. And that's the burden. The burden doesn't necessarily have to be a heavy truck that's driving over. The burden can be measured in other risks that are involved other than just simply the size of the vehicle. What about if H&R designates it as an Audubon nature area and it's used for bird watching? And actually more people come to bird watch than hunt. And the bird watchers carry binoculars. So they're walking across the easement. Under your argument, that would be a lot different than farming. It is different, but from a burden aspect, that is an easier case to decide. Because there's no bird? The burden is, you know, farming is pastoral in nature. It's a quiet enterprise. There's very little risk. So is bird watching. There's not a lot of risk. You have basically people with binoculars. That's a lot different than farming, though. So now the burden is that your clients are focusing on the tools that are going to be used to do the... I think that when it comes to the burden, that is significant. The change of use, I think that that is a change of use. If you have bird watching, that's a different use. And that if you strictly construe the use, that that would be prohibited. Because that was not what gave rise to prescriptive use in the first place, which is farming. I mean, where do you draw the line? Well, one line might be drawn by an argument that I don't know what was being hunted back there. But let's say, for example, this is an area where there are deer. An awful lot of farmers think that it's good conservation practice to thin deer herds because of the damage to farmland and because it keeps the deer healthier. Because those... And I'm not a hunter, so I'm thinking about what I've read. To thin out the herd so that the animals that are older and are going to die from freezing or they're not as healthy, those are the animals that are more likely to fall prey to the hunter. And that's good land use management, conservation, and keeps farmers' crops from being damaged. Except that there are going to be no crops anymore on this ground. Well, there'll be crops nearby, won't there, somewhere? There will. So other farmers that have crops, their crops could... I mean, isn't that a plausible argument? And I know this is hypothetical because if it was deer, someone could make the argument this is good conservation and it's good for the farmer because it decreases the size of the deer herd, which reduces... Otherwise, it would reduce his harvest because of the damage to... I can appreciate that argument, but I would raise this to counter it, Justice. A prescriptive easement is taking something from an owner that the owner is not consenting to. A prescriptive easement basically is, I think, should be strictly construed, should be strictly interpreted because there's no consideration for it. There's no consent to it. And therefore, it should be narrowly interpreted for whatever use it was acquired by or it was earned, whatever term you want to use. You know, the elements are 20 years of repeated, open, notorious use of it. Would you be able to make the same argument if the vehicles that we're accessing, and I don't even know what tractors are, but first it's gasoline and then it's diesel. And one is noisier than the other, and I know people talk about diesel being polluting. It would be the same use, but the instruments being used to access would be a burden on the land, possibly because there's more pollution? It would, except that whether it's diesel or gas, it's a farm implement. And I think that's what earned this prescriptive easement, the fact that farm implements were going and coming to till the soil. And I don't think you can get anywhere with distinguishing whether that's gasoline or diesel driven. It's a piece of farm equipment. But I consented to the easement. I consented to the easement because it wasn't noisy. Now it's noisy because of the kind of equipment that's going on the easement. Would your client be able to say, well, for years we didn't even hear it. And now we hear it all the time. I think you could probably argue that that is a burden, but it's a slim argument, Your Honor. I think the hunting is a clear, because it's a license, it's a regulated. Hunters are, it's a risky, it's a risky operation. It's inherently risky. And inherently, I think a landowner has a unique right as to whether to consent to hunting on their land or not. But is there hunting going on on their land? On the dominant servant. Well, the easement is for access to get to the agent, you know. Agent R is hunting on them. Right. So that's where the hunting is going to take place, right? Yes. The hunting is taking place on the dominant land. They're crossing. For me it seems like you're arguing they're going to be put in a position, your clients are going to be put in a position where people are hunting on their land. No. And putting them at risk of being, you know, subject to firearms being used on their land. Yeah. They're not permitted to hunt on the servant. The question is, the issue is they're crossing it to get to their hunting. Right. Just in conclusion, Your Honor, I believe the test that the trial court applied, that this was an easement for access, and therefore the change of use does not matter. If that were the test, then it would be an open book. If it's an easement of access, you could do anything with the dominant property. The result in Limestone and Anargo would have been totally different because they would have allowed the chlorine. They would have allowed the 24-inch pipe. So I think that the courts applied the wrong test. They were an error in their decision. And we would respectfully ask the court to reverse the judgment of the trial court. Thank you, Counsel. You'll have additional time on rebuttal if you so desire. Are you willing to proceed, Mr. Barger? Yes, Your Honor. May it please the Court, Counsel, my name is John Barger with Craig & Craig LLC from Mattoon. I commented to Counsel as I entered the courtroom, a case that's gone on for six years. I've got it down to two pieces of paper. So I'll try to keep this as simple as possible. We contend that Judge Lewis entered a well-reasoned opinion and order, and those should be affirmed in this case. I think it's particularly noteworthy if you look at the reply brief of the defendants. The defendants say the defendants are not asking the court to review the trial court's finding that a prescriptive easement had been created. The only real issues are whether the easement was abandoned or whether the proposed use was in excess of the prescriptive right. This is a case involving a prescriptive easement and not land use. Counsel's made a big issue about plaintiffs and their persons hunting on their own property. I know it wouldn't be effective to do this, but what would prohibit them from coming in with a helicopter and landing there and hunting on their own property? The real issue is the prescriptive easement. The court has picked up on this. The real purpose of that prescriptive easement is for ingress and egress. The court also picked up on the issue that while the primary use of the plaintiff's property was for farming purposes, Stuart Ensor and his grandfather used it for other purposes. Those included shooting clay pigeons across Big Creek, riding jeeps, motorcycles, four-wheelers. So it isn't exclusively for farming purposes. The prior use of this particular easement is very much the same as what my client would like to use it for, with the exception there are not going to be any combines and not going to be any grain trucks coming out of that property. The court has probably observed the size of combines anymore. They're larger than some people's homes. I can guarantee you having grown up on a farm, standing next to one of them, they're very noisy. Eighteen-wheelers are the standard trucks being used hauling grain presently. So we would contend that the proposed use by the plaintiff is not going to be as intrusive as the prior use for farming purposes. When it was previously used for farming purposes, would somebody drive a loaded grain truck that was the largest size that's typically used to take to the elevator, or I guess that's the biggest size, would you drive it on a grassy easement? In that time of year in the fall when it was dry, and I would almost guarantee you that the Miller brothers who farmed 2,500 acres would have had large equipment like that, particularly in the end, and a lot of noise and a lot of size. Otherwise, the same type of equipment is going to be used, tractors, discs, and primarily a pickup truck. Quite frankly, my client's primary use of this lane would be with a pickup truck. Counsel, it appears to me the use of the grassy lane was permissive, but you're saying that's not an issue for this court to consider, right? Well, I don't think there's any history as to how the whole arrangement started, and I think that the people who knew the original relationship, a Cliff Pines and a Bob Maurer, were both deceased at the time of trial. So I think Judge Lewis had it right that the onset of this prescriptive easement was unknown. There's no testimony as to how it got started. Okay, well, when you first started your argument, you referred to the reply brief. The sentence, defendants are not asking the court to review the trial court's finding that prescriptive easement had been created. I think then it follows that whether it was permissive is not even at issue as far as this appeal goes, right? I don't think the defendants are appealing on that issue. I just want to clarify that. The court has picked up on it, and I think the focus of this case must be the burden placed on the prescriptive easement. In this case, it clearly was not increased. In fact, it was lessened. As to non-use, there are two factors. As to abandonment, there are two issues. There are non-use and acts which manifest an intention to abandon. Stuart Ensor testified that he continued to use this lane after the WRP program was put in place. Ken Halcom and Shannon Richter were the plaintiff who continued to use it until the gate was put up and they were locked down. There's no intention, there's no document, there's no testimony to show that anybody intended on abandoning this. These same arguments presented by the defendant to this court were presented four or five times to Judge Lewis in different stages of proceeding. Multiple motions to dismiss and a motion for judgment during the course of the trial. We would contend that Judge Lewis' opinion and order are well-reasoned and should be affirmed. Thank you, counsel. Any rebuttal, Mr. Hines? Very briefly, Your Honor. Prescriptive easements are limited and qualified by the use they created. That's a policy. Illinois courts, I believe that the quote in the Arnardville case is that Illinois courts have been loath to agree to changes of use in prescriptive easements. Because it basically just opens the book. Prescriptive easement is earned. It's earned in a certain manner. In this case, it was by farm access with farm equipment so that they could farm the ground. It was abandoned when they put the property into the government program. There's one case I cite, the Schnabel case, which involved a railroad right-of-way, which the railroad went to the Commerce Commission and got the right to abandon it and remove the tracks, and then they attempted to give it to the Cook County Park District for a bikeway. And the court said no. That was a deeded easement, not a prescriptive easement. You just can't change the use. An easement is for generally a purpose, a use. Here, it was for farming. It's a prescriptive easement granted for farming. You cannot change the use. I think that that needs to be the rule. Otherwise, it's not an easement, it's a fee simple. Your Honor, I respectfully request the court to reverse the trial. Thank you, counsel. We'll take this matter under advisement and we'll be in recess until the next case.